UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| KATHY L WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:25-cv-00435-ALT |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, *sued as Frank Bisignano,* | ) | |
| *Commissioner of the Social Security* | ) | |
| *Administration,* | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Kathy L Wilson appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying her application for Disability

Insurance Benefits (DIB) and Period of Disability for the period of December 20, 1998, to

December 31, 2005, and Supplemental Security Income from December 20, 1998, to March 12,

2008. (ECF 1; *see* ECF 14 at 51-52). Wilson filed her opening brief on December 19, 2025, and

the Commissioner filed a response in opposition on March 23, 2026. (ECF 19, 25). Wilson filed

her reply brief on March 30, 2026. (ECF 26). Therefore, the case is ripe for ruling.

For the following reasons, the Commissioner's decision will be REVERSED and

REMANDED.

### I. FACTUAL AND PROCEDURAL HISTORY

Wilson applied for SSI and DIB in September 2004, alleging disability beginning

December 20, 1998. (ECF 14 Administrative Record ("AR") at 16, 868-72).[1] The application

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

1

was initially denied on January 20, 2005, and again on March 14, 2005, upon reconsideration. (AR 244-48, 252-54). An Administrative Law Judge (ALJ) denied the claim on February 2, 2006, and Wilson appealed this decision to the Appeals Council. (AR 269, 283-84).

Wilson filed a new DIB application on March 8, 2006, and a new SSI application on March 14, 2006. (AR 878-82, 946-48). These claims were denied, but the SSI claim was ultimately combined with the previous application after the Appeals Council remanded the prior applications for a new hearing in December of 2006. (AR 285-87, 297-300, 354, 808-14).

After a new hearing, an ALJ denied Wilson's claims on September 19, 2007. (AR 351). The Appeals Council denied an appeal in August of 2008, and on appeal to the U.S. District Court for the Northern District of Indiana, the claim was remanded back to the agency for further review. (AR 376, 379-394, 398).

On rehearing, an ALJ issued a partially favorable decision on September 13, 2010, finding Wilson was disabled as of March 13, 2008. (AR 446, 462-463). Wilson appealed this finding to the U.S. District Court for the Northern District of Indiana, and the claim was again remanded back to the agency in February of 2013. (AR 92). On September 30, 2014, another ALJ found Wilson not disabled for the period prior March 13, 2008. (AR 93, 96). This decision was appealed up to the Seventh Circuit Court of Appeals, who vacated the ALJ's findings and remanded the case on April 18, 2018. (AR 132-44).

On November 26, 2021, another ALJ decision was issued denying Wilson's disability claims for the period prior to March 13, 2008. (AR 155, 159). This decision was also vacated at the District Court level, resulting in a remand for another hearing. (AR179-80). On July 6, 2023, an ALJ issued another unfavorable finding for the period prior to March 13, 2008. (AR 188,

191). However, this decision was vacated at the District Court level and remanded for a new hearing. (AR 229).

On March 27, 2025, Wilson appeared for a phone hearing before ALJ William Pierson. (AR 66, 69). Wilson was represented by counsel, and vocational expert (VE) Mary Harris also appeared. (AR 66). The ALJ issued an unfavorable decision on April 21, 2025 concluding that Wilson was not disabled in the period of December 20, 1998, to March 12, 2008, because she was capable of performing a significant number of jobs in the national economy. (AR 13-50, 69). Because this case has been previously remanded, the ALJ's decision is the final decision of the agency. *See* 20 C.F.R. §§ 404.984, 416.1484.

Wilson filed a complaint in this district court requesting review of the Commissioner's final decision on August 18, 2025. (ECF 1). In this appeal, Wilson argues the ALJ erred by crafting an RFC inconsistent with the record and unsupported by substantial evidence. (ECF 19 at 11). On the date of the Commissioner's final decision, Wilson was sixty-seven years old and had limited education and no past relevant work. (AR 50-51).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d

863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

#### *A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. §§ 404.1520, 416.920. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant's maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

### B. The Commissioner's Final Decision

As a threshold matter, the ALJ found that Wilson met the insured status requirements for DIB through December 31, 2025. (AR 20).[2] At step one, the ALJ found Wilson had not engaged in substantial gainful activity from December 20, 1998, the alleged onset date, through March 12, 2008, the period at issue. (AR 20-21). At step two, the ALJ found that Wilson had the following severe impairments during the period at issue: degenerative arthritis/or changes of the right knee and left foot and ankle, and obesity. (AR 21). At step three, the ALJ found Wilson did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 39).

The ALJ assigned Wilson the following RFC during the period at issue:

---

[2] Therefore, for purposes of her DIB claim, Wilson must establish that she was disabled as of December 31, 2025. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled as of her date last insured in order to recover DIB).

> [T]he claimant had the residual functional capacity during the period at issue to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).

(AR 40).

At step four, the ALJ made no finding as to whether Wilson could perform past relevant work. (AR 49). However, at step five the ALJ found that a hypothetical individual of Wilson's age, education, experience, and RFC could perform a significant number of jobs in the national economy during the period at issue. (AR 50). Thus, Wilson's applications DIB and period of disability were denied for the period at issue. (AR 50-51).

### C. The RFC and Postural Limitations

Wilson argues the RFC is inconsistent with the record and unsupported by substantial evidence. (ECF 19 at 11). Wilson says the ALJ "rejects multiple agency doctor opinions about Plaintiff's postural limitations without acknowledging the conflict [with the ALJ's conclusion] or attempting to rationalize their contradictory conclusion." (*Id*.). Wilson's argument is persuasive.

Under 20 CFR §§ 404.1569a and 416.969a, the regulations make a distinction between exertional and non-exertional limitations. Exertional limitations affect a claimant's ability to meet the physical demands of a job, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 CFR §§ 404.1569a(b), 416.969a(b). Non-exertional limitations include, among other things, a claimant's ability to perform the manipulative or postural functions of a job such as reaching, handling, stooping, climbing, crawling, or crouching. 20 CFR §§ 404.1569a(c)(1), 416.969a(c)(1). The ALJ's assigned RFC only includes an exertional limitation, limiting Wilson to sedentary work. (AR 40). The RFC represents the maximum of Wilson's capabilities, so without any postural limitations in the RFC, the ALJ has found that Wilson could perform all postural maneuverers without any limitations. The ALJ did not build a logical bridge to this conclusion, and this conclusion is not supported by substantial evidence.

In the decision, the ALJ analyzes various medical opinions, but does not analyze the postural limitations contained in these medical opinions or articulate why the suggestions of postural limitations are unpersuasive. For instance, the ALJ stated that he gave the November 2004 state agency determinations partial weight, acknowledging that F. Montoya, M.D. noted Wison "could perform limited pushing and pulling with the lower extremities, occasionally or never climb, and occasionally balance, stoop, kneel, crouch, and crawl. The record ultimately supports a sedentary exertional level." (AR 47). In addition to exertional limitations, this medical opinion suggests non-exertional or postural limitations. (*See* AR 1564). Given the ALJ gave this medical opinion partial weight and used it to support his findings as to exertional level, but found no limitation as to non-exertional level, he implicitly rejected Dr. Montoya's recommendation in part without any explanation. Dr. Montoya's opinion contradicts the RFC with no postural limitations, and without analysis explaining why the ALJ rejected this portion of the medical opinion, there is no logical bridge. *See Spicher v. Berryhill*, 898 F.3d 754, 758 (7th Cir. 2018).

The ALJ continues to fail to discuss postural limitations in discussing the opinions of Jonathan Sands and F. Lavallo, M.D. In medical consultant Sands' report, he indicated the need for occasional postural limitations. (AR 1614). The ALJ did discuss this determination, giving it no weight, but the ALJ found Sands' recommendation that Wilson could "perform light work with occasional postural limitations" to be "excessive considering the claimant's obesity and lower extremity issues." (AR 47). It is difficult to understand how Sands' report could be rejected for containing not enough limitations and yet the ALJ failed to include any for the suggested postural limitations in the RFC. This contradiction is further confused because Dr. Lavallo went on to affirm Sands' determination, and because Dr. Lavallo is an acceptable medical source, the ALJ gave Dr. Lavallo's determination some weight. (AR 47, 1656). In short, Sands' report

contains postural limitations, and the ALJ gave Dr. Lavallo's affirmance of that opinion some weight. Without explanation as to why the postural limitations aspect of the opinion is rejected and the lack of postural limitations in the RFC is explained, there is no logical bridge. Where a medical opinion contradicts the RFC, the ALJ is "required to provide enough analysis to allow a re-viewing court to determine why [he] rejected it." *Spicher,* 898 F.3d 7at 758 (citation omitted). The ALJ did not do so.

Lastly, Wilson points to an agency doctor review from 1999 where L. Bastnagel, M.D., indicated Wilson could occasionally climb ramps, stairs, ladders, ropes, or scaffolds and occasionally balance, stoop, kneel, crouch, and crawl. (AR 1267). "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). In this case, the RFC included no postural limitations, and thus the ALJ was required to confront the evidence and opinions which determined postural limitations were appropriate. Without minimal articulation from the ALJ, the RFC and the decision are not supported by substantial evidence and remand is appropriate. *Warnell v. O'Malley,* 97 F.4th 1050, 1053 (7th Cir. 2024); *see also Morales v. O'Malley,* 103 F.4th 469, 471 (7th Cir. 2024). On reconsideration, the ALJ is directed to consider the evidence which suggests postural or non-exertional limitations and minimally articulate their analysis as to these limitations.

Further, remand is appropriate because the inclusion of non-exertional limitations may affect the ALJ's analysis under 20 CFR §§ 404.1569a and 416.969a and may erode the sedentary job base and impact the number of jobs testified to by the VE. If the ALJ were to include non-exertional limitations, the ALJ should consider the combined effects of these limitations of the number of available jobs. Although an individual non-exertional limit may not erode the

sedentary job base (such as only a limitation in stooping), the ALJ should consider the combined effects of all non-exertional limitations, pose necessary questions to the VE, and understand the impact of the non-exertional limitations on the sedentary job base. *Lollar v. Kijakazi*, No. 3:20-CV-3298-BH, 2022 WL 4133309, at *8 (N.D. Tex. Sept. 12, 2022) ("Any administrative notice that each nonexertional limitation is not significant is not sufficient to support a finding that Plaintiff's combined nonexertional limitations did not significantly erode the number of sedentary work available in the national economy."). The failure of the ALJ to articulate his reasoning as to non-exertional limitations is not harmless error.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and the case REMANDED for further proceedings. The Clerk is DIRECTED to enter a judgment in favor of Wilson and against the Commissioner.

SO ORDERED.

Entered this 15th day of June 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge